UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                              10-cr-74 (PKC)

                    -against-                                 MEMORANDUM
                                                              AND ORDER

JOSE LUIS GRACESQUI,

                              Defendant.
----------------------------------------------------------x

CASTEL, U.S.D.J.

        Defendant Jose Luis Gracesqui has moved to sever Count Five of the Indictment

on the ground of improper joinder. Rule 8(a), Fed. R. Crim. P.  Alternatively, he seeks a separate

trial of Count Five.  Rule 14(a), Fed. R. Crim. P.  For reasons that will be explained, defendant's

motion is denied.

BACKGROUND

        Jose Luis Gracesqui is a defendant in a five count indictment (the "Indictment")

returned by a grand jury on October 28, 2014.  Counts One through Four relate to the July 19,

1999 killing of Richard Diaz (the "Diaz Murder") and Count Five relates to the October 13, 2000

killing of John Ochoa (the "Ochoa Murder").  Count One charges defendant with participation in

the Diaz Murder while being engaged in a heroin conspiracy in violation of 21 U.S.C §

848(e)(1)(A) and 18 U.S.C. §2.  Count Two charges defendant with participating in a murder-

for-hire conspiracy in violation of 18 U.S.C §1958, relating to the Diaz Murder.  Count Three

charges defendant with a substantive count of murder-for-hire in violation of 18 U.S.C §§1958

and 2, also relating to the Diaz Murder.  Count Four charges defendant with using a firearm in

relation to the murder-for-hire conspiracy and the murder-for-hire, causing the death of Diaz, in

violation of 18 U.S.C §§ 924(j) and 2.  And, Count Five charges defendant with causing the death of Ochoa by discharging a firearm during a conspiracy to commit robbery in violation of 18 U.S.C §§924(j) and 2.

The government alleges that, at the time of the Diaz Murder, co-defendant Frank Mercedes controlled a significant, wholesale drug-trafficking operation in Manhattan.  In response to a customer ("Intended Victim-1") stealing drugs and guns from a Mercedes stash apartment, Mercedes recruited defendant and two co-conspirators ("CC-1" and "CC-2") to rob the customer.  According to the government, defendant, CC-1 and CC-2 had committed other drug robberies together, prior to being recruited by Mercedes.

Ultimately, defendant, CC-1, and CC-2 agreed to kill Intended Victim-1 for Mercedes.  In their attempt to kill Intended Victim-1, the government alleges that defendant shot and killed Diaz, a passenger in Intended Victim-1's car, with either a 9mm or a .38 caliber pistol. According to the government, defendant, CC-1, and CC-2 continued committing drug robberies together after the Diaz Murder.

Around 15 months after the Diaz Murder, the government alleges that CC-1, who himself was recruited by Colombian drug traffickers, recruited defendant to rob John Ochoa of drug proceeds.  In an attempt to rob Ochoa, defendant and CC-1 entered Ochoa's apartment and defendant ultimately shot and killed Ochoa.  The government claims that defendant was carrying a 9mm pistol and that a 9mm pistol casing was recovered from Ochoa's bedroom.

DISCUSSION

I.     Joinder under Rule 8(a).

Defendant has moved to sever Count Five from Count One, Two, Three and Four of the Indictment.  Defendant argues that Count Five is not properly joined with Counts One

through Four pursuant to Rule 8(a), Fed. R. Crim. P., because it is not (1) based on the same act or transaction, (2) part of a common scheme or plan, and, (3) of the same or similar character. The government argues that all the counts in the Indictment are "of the same or similar character." The Court holds that all the counts in this Indictment are properly joined.

Rule 8(a) provides that two or more offenses may be joined in a single indictment if the offenses charged are "of the same or similar character, or based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Joinder of charges under Rule 8(a) "is not limited to crimes of the 'same' character but also covers those of 'similar' character, which means . . . 'early corresponding; resembling in many respects; somewhat alike; having a general likeness'." United States v. Werner, 620 F.2d 922, 926 (2d Cir. 1980) (citing Webster's New International Dictionary (2d ed.)).

When considering whether joinder is proper under the "same or similar character" prong of Rule 8(a), there need not be "too precise an identity between the character of the offenses." Werner, 620 F.2d at 926 (citing Edwards v. Squier, 178 F.2d 758, 759 (9th Cir. 1949)). Furthermore, no single characteristic is determinative and "each case depends largely on its own facts." United States v. Blakney, 941 F.2d 114, 116 (2d Cir. 1991). Joinder is proper where the same evidence will support multiple counts, see Blakney, 941 F.2d at 116, or where multiple counts "have sufficient logical connection," United States v. Ruiz, 894 F.2d 501, 505 (2d Cir. 1990). In its analysis, "a court may consider both what is alleged in the indictment as well as the Government's pretrial representations of the evidence that will be presented at trial." United States v. Ezeobi, No. 10 CR. 669 DLC, 2011 WL 3625662, at *1 (S.D.N.Y. Aug. 17, 2011) (citing United States v. Ajlouny, 629 F.2d 830, 842 (2d Cir.1980)).

Rule 8(a) affords "a liberal standard for joinder."  United States v. McGrath, 558 F.2d 1102, 1106 (2d Cir. 1977).  For example, the Second Circuit upheld the joinder of charges that involved independent acts of sexual exploitation of different children by a single defendant on grounds that they shared the same "general likeness" in terms of the defendant's conduct.  United States v. Rivera, 546 F.3d 245, 253-54 (2d Cir. 2008).  Similarly, the Second Circuit upheld the joinder of theft charges from an incident in 1976 with armed robbery charges from a separate incident in 1978 because in both circumstances the defendant used his position with Lufthansa to obtain money or property.  United States v. Werner, 620 F.2d at 926-27.

In this case, defendant asserts that Count Five is not of the "same or similar character" as the other counts in the Indictment.  He argues that Count Five should be tried separately because Counts One through Four involve a narcotics and murder-for-hire conspiracy while Count Five involves a conspiracy to commit robbery.  Defendant also argues that each homicide will require different witnesses.  He relies on United States v. Tubol 191 F.3d 88 (2d Cir. 1999) and United States v. Martinez 92 CR. 839 (SWK), 1993 WL 322768 (S.D.N.Y. Aug. 19, 1993) to support his position.

In Tubol, 191 F.3d at 94, the Second Circuit reversed the district court's order of a joint trial on a bank robbery charge and a charge of robbery of an appliance store.[1]  The Circuit concluded that the defendant "used distinctly different methods in the two robberies for which he was convicted."  Id. at 95.  And, that he "targeted distinctly different victims—a bank and a small store."  Id.  Because of these differences, the similarities between the two robberies, including "the use of a gun and proximity in time and place," did not sufficiently support joinder. Id.

---

[1] The district court in Tubol,191 F.3d at 92, originally granted defendant's motion to sever the charges, but later ordered a joint trial on all the charges prior to the start of defendant's second trial.

In <u>United States v. Martinez</u>, 1993 WL 322768, at *8, the district court held that a separate firearm possession charge and a narcotics conspiracy charge were not of "the same or similar character" because there was no evidence of any relationship between the defendant's gun possession and his narcotics conspiracy.

Here, however, there are commonalities that support the conclusion that Count Five, relating to the Ochoa Murder, is of the "same or similar character" as the other four Counts, relating to the Diaz Murder.  On Counts One through Four, the government alleges Frank Mercedes, a wholesale drug trafficker, initially recruited defendant to rob Intended Victim-1, creating a conspiracy that ultimately involved an agreement to kill Intended Victim-1 and the actual killing of Diaz by defendant.  On Count Five, the government alleges that CC-1, who was first recruited by Columbian drug traffickers, recruited defendant to rob Ochoa of drug proceeds, which ultimately led to the killing of Ochoa by defendant.  Thus, in both instances, individuals involved in drug trafficking recruited defendant to rob the intended victims of drugs or drug proceeds.  In addition, the government will endeavor to prove that defendant was the triggerman in both murders.

Importantly, the government represents that it will offer material testimony from CC-1 on both the Diaz Murder and the Ochoa Murder.  CC-1 is expected to testify that Mercedes recruited defendant and CC-1 into the conspiracies charged in Counts One and Two that resulted in the Diaz Murder.  The government also represents that it was CC-1 who recruited defendant into the drug robbery scheme that led to the Ochoa Murder.  The government likely will endeavor to prove the nature of the relationship between defendant and CC-1 and why it was plausible for each to trust the other.  For example, the government represents that it will offer

Rule 404(b), Fed. R. Evid., evidence that defendant and CC-1 have committed multiple other drug-related robberies together.

On the basis of these commonalities, the Diaz and Ochoa Murders have a "sufficient logical connection" that supports joinder under Rule 8(a). Similar to Rivera, the two alleged killings share the same "general likeness" as to defendant's conduct: both killings occurred with defendant as the triggerman and were an outgrowth of defendant's involvement in drug trafficking with the same individual, CC-1. The fact that the Diaz Murder involved murder-for-hire and narcotics conspiracies and the Ochoa Murder involved a conspiracy to rob an individual of drug proceeds is not adequate to undercut their similar character. Because, unlike Tubol and Martinez, both killings involved similar victims and modus operandi and there is some causal relationship between the two, *i.e.* the relationship between defendant and CC-1 and the connection to the drug trade.

The Diaz Murder and Ochoa Murder are of "the same or similar character" and are properly joined under Rule 8(a).

II.     Severance under Rule 14(a).

Defendant has also moved to sever the Ochoa Murder—Count Five—from the other counts in the indictment pursuant to Rule 14(a), Fed. R. Crim. P. He argues that, even if the counts are properly joined, the inclusion of Count Five in the Indictment prejudices him by creating a high risk of jury confusion and cumulative evidence. Defendant also argues that a limiting instruction will not remedy this prejudice. The Court, however, will not sever Count Five from the Indictment because its joinder is not likely to substantially prejudice defendant in any unfair way.

"If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Rule 14(a), Fed. R. Crim. P.

In order to prevail on a motion to sever charges under Rule 14(a), "the defendant must show not simply some prejudice but substantial prejudice." <u>Werner</u>, 620 F.2d at 928. A separate trial should not be granted "simply on a showing of some adverse effect, particularly solely the adverse effect of being tried for two crimes rather than one . . . ." <u>United States v. Sampson</u>, 385 F.3d 183, 190 (2d Cir. 2004) (quoting <u>Werner</u>, 620 F.2d at 929). A court must, nevertheless, remain

"alert to the danger that . . . 'the jury may use the evidence cumulatively; that is, that although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all.'"

<u>Werner</u>, 620 F.2d at 929 (quoting <u>United States v. Lotsch</u>, 102 F.2d 35, 36 (2d Cir. 1939). However, "[w]hen the accused's conduct on several separate occasions can properly be examined in detail, the objection disappears, and the only consideration is whether the trial as a whole may not become too confused for the jury." <u>Id.</u>

The Supreme Court has counseled that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993).[2] Furthermore, a proper limiting instruction "often will suffice to cure any risk of prejudice," although "a district court is more likely to determine that separate trials are necessary" where the risk of prejudice is high. <u>Id.</u>

---

[2] While <u>Zafiro</u> dealt with the joint trial of multiple defendants, the Supreme Court's interpretation of Rule 14(a) applies whether a court is facing a motion for separate trials of multiple counts or multiple defendants, both of which are covered by Rule 14(a). <u>See United States v. Page</u>, 657 F.3d 126, 129 (2d Cir. 2011).

A defendant must allege more than a generalized threat of jury confusion or cumulative evidence to succeed in a motion to sever.  In United States v. Rivera, 546 F.3d at 254, for example, the defendant argued that the district court's failure to sever the charges relating to his independent acts of sexual exploitation caused him substantial prejudice; he asserted that the evidence presented on one count created a "spillover" effect with the jury as to his guilt on the other counts.  The Second Circuit disagreed, holding instead that the defendant's generalized claim of prejudice was insufficient and that the district court's limiting instruction ordering the jury to "consider each count separately and return a separate verdict of guilty or not guilty for each" was effective.  Id.  It noted that proof of the actions underlying each separate count of child sexual exploitation would likely have been admissible in a separate trial on any of the counts under Rule 414, Fed. R. Evid.  Id.  Cf. Herring v. Meachum, 11 F.3d 374, 378 (2d Cir. 1993) (upholding joinder of two unrelated murder charges against Due Process challenge because court's limiting instruction was effective and because "the evidence with respect to each murder was distinct and easily compartmentalized").

Defendant has not met his burden of showing that joinder of the two charges would create substantial prejudice.  He has not shown that a jury would be incapable of evaluating the Diaz Murder and Ochoa Murder as separate charges or that a joint trial, when buttressed by a proper limiting instruction, would become too confusing for the jury.  Defendant has also not shown that a joint trial compromises a specific trial right or precludes the jury from making a reliable judgment on each separate count.  Defendant musters only conclusory statements that he is at "serious risk that a joint trial would prevent the jury from making a reliable and trusted judgment about his guilt or innocence, and compromise his constitutional

right to a fair trial," (Def. Reply Memo. of Law, at 10), and relies primarily on two Second Circuit cases that are inapposite.

In one case, United States v. Sampson, 385 F.3d at 191-93, the critical factor making the joint trial of separate drug and firearm charges substantially prejudicial was the defendant's "particularized showing concerning the testimony he would have given at a trial on the 1998 counts had the court granted the severance motion and his reasons for wanting to remain silent on the 2000 counts." Defendant here, however, does not argue that he would present exculpatory evidence—or otherwise challenge the government's claims—as to the Diaz Murder in a way that would prejudice him with respect to the Ochoa Murder, or vice versa. Therefore, the rub in Sampson is not present. In another case, United States v. Jones, 16 F.3d 487, 492-93 (2d Cir. 1994), the Second Circuit cited the government's addition of a new felony gun possession count only after the defendant's prior robbery trial ended in a hung jury as well as the government's use of that count to elicit the defendant's prior conviction in the second trial as the cause of substantial prejudice. The trial tactics used by the government in Jones are also not present here.

Even if defendant did receive separate trials on the Diaz and Ochoa Murders, it is likely that some evidence relating to both murders would be admissible in either trial. Testimony regarding the Diaz Murder would likely come in during a trial of the Ochoa Murder to explain the criminal relationship between CC-1 and defendant, i.e. the reason why it is plausible that they would have trusted one another. Offered for this purpose, it would be direct evidence of the crime charged in Count Five. See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) ("[E]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged

offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial."); United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) ("[E]vidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense.").  The probative value of this evidence would not be substantially outweighed by the danger of unfair prejudice, even though it would relate to a different murder, because it would be no more sensational or disturbing than the murder charged.  See Rule 403, Fed. R. Evid.  Cf. United States v. Cheng, 131 F.3d 132 (2d Cir. 1997) (upholding admission of evidence showing previous uncharged kidnapping where defendant was charged with conspiracy to commit hostage-taking); United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992) (upholding admission of evidence of prior narcotics transactions where defendant was charged with conspiracy to distribute heroin); United States v. Roldan-Zapata, 916 F.2d 795 (2d Cir. 1990) (upholding admission of evidence showing pre-existing drug trafficking relationship where defendant was charged with conspiracy to distribute cocaine).

Regardless of the sequence of any separate murder trials, the government would likely elicit testimony by CC-1 about his guilty plea on counts relating to both murders and his cooperation agreement with the government "to avoid the appearance that [the government] was concealing impeachment evidence from the jury."  United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991); see also United States v. Louis, 814 F.2d 852, 856 (2d Cir. 1987).  The government represents that CC-2 was part of the conspiracy to distribute the narcotics possessed by Intended Victim-1, as charged in Count One, and the conspiracy to murder Intended Victim-1, as charged in Count Two.  The government also represents that CC-2's testimony would be

"relevant to establishing the robbery conspiracy underlying Count Five."  (Gov't Memo. of Law, at 9.)

A joint trial of these Counts promotes the important policy considerations underpinning Rule 8, "that of trial convenience and economy of judicial and prosecutorial resources."  <u>Werner</u>, 620 F.2d at 928.  Separate trials of the Diaz and Ochoa Murders would deprive the public of the efficiency of a joint trial and expose the government's witnesses, CC-1 and CC-2, to cross-examination in both cases.

Defendant has not demonstrated a serious risk of substantial prejudice and the Court will not sever Count Five from the Indictment or order a separate trial.  Defendant is invited to submit appropriate limiting instructions to the Court.

CONCLUSION

The motion to sever Count Five from Count One through Four pursuant to Rule 8(a) and Rule 14(a) is DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
            September 8, 2015

- 11 -